UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CITY OF CROWN POINT, INDIANA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 2:20-cv-359-PPS-JPK ) |
| CAPGROW HOLDINGS JV SUB V LLC, PINNACLE TREATMENT CENTERS, INC. and PINNACLE TREATMENT CENTERS IN-I, LLC, | ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

The City of Crown Point, Indiana brought this action in state court against the owners and operators of a home that provides refuge and treatment for those afflicted by drug addiction. Crown Point claims the home is in violation of its zoning laws. Crown Point wants an injunction shutting the home down and seeks fines to boot. The defendants removed the case to this Court on the grounds of diversity jurisdiction. Crown Point now seeks to have the case remanded to state court on the grounds that the amount in controversy has not been met. [DE 14.] Because I find that there is more than $75,000 at stake in this lawsuit, the Motion to Remand will be DENIED.

### Background

The City of Crown Point, Indiana filed this case in the Lake County Superior Court on September 1, 2020. Defendant CapGrow Holdings JV Sub V LLC owns a home in Crown Point and leased it to Co-Defendants Pinnacle Treatment Centers, Inc. and Pinnacle Treatment Centers IN-I, LLC. The lease is for a five-year term starting at

$2,726 per month and increasing 2% per year. [DE 20-2.] Pinnacle uses the home as temporary lodging for patients recovering from substance abuse. This practice allegedly violates the Crown Point's Zoning Code, which prohibits temporary lodging for more than five unrelated patients in a residential area and considers Defendants' violation a nuisance. The home is in an area zoned as R-1 which is limited to single-family dwellings, public and parochial schools, public parks and playgrounds, churches, essential services, and accessory uses. Zoning Code Section 150.19. Specifically, Crown Point restricts single-family dwellings to five individuals, unless related by blood or marriage. Zoning Code Section 150.02. The penalty for "[a]ny person who violates any provision of this chapter shall upon conviction be fined not less than $10 and not more than $300. Each day that the violation continues shall constitute a separate offense." Zoning Code Section 150.99.

On May 18, 2020, Crown Point issued a Notice of Ordinance Violation, believing eight to ten non-related individuals were temporarily staying in the Defendants' home and being treated for substance abuse. Then, three months later, Crown Point filed suit against the Defendants in the Lake Superior Court seeking an permanent injunction, declaratory judgment, and money damages including all applicable fines and penalties, costs and attorney's fees associated with bringing this action, and the ubiquitous "all other appropriate relief." [DE 4.] Defendants timely removed this case to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. [DE 1.] There is a related case also pending before me. *See Pinnacle Treatment Centers, Inc. v. Crown Point*, 2:20-CV-336. That

2

case is basically the flip side to this case; Pinnacle is suing Crown Point in that case alleging federal housing discrimination.

In this case, Magistrate Judge Kolar issued an order noting his belief that the amount in controversy was met but expressing concern whether there was complete diversity. (There are LLCs involved in the case which complicates the citizenship question). Judge Kolar sought a supplemental jurisdictional statement properly alleging the citizenship of the LLCs. [DE 7.] Defendants filed a supplemental jurisdiction clarifying the citizenship. [DE 11.]

From Crown Point's perspective, the problem with jurisdiction in this case is not the citizenship of the parties but the amount in controversy. Crown Point claims that the defendants failed to meet its burden of establishing that more than $75,000 was at stake in this litigation. So, on November 5, 2020, the City filed a motion to remand on those grounds. [DE 14.]

## Discussion

A defendant in state court may remove "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," between citizens of different states. 28 U.S.C. § 1332(a)(1). For removal based on diversity jurisdiction, the removing defendant must establish either "what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost the defendant." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006). Without original jurisdiction, the case must be remanded back to state court. 28 U.S.C. § 1447(c).

A removing party must point to more than "the theoretical availability of certain categories of damages" to reach the proper amount in controversy. *McMillan v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009). However, "[t]hat is easier said than done when the plaintiff, the master of the complaint, does not want to be in federal court and provides little information about the value of [its] claims. In such a case, a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2007). A removing defendant is not limited to the four corners of the complaint in establishing the amount in controversy; instead, they can prove it through a variety of methods. *Meridian Sec. Ins. Co.*, 441 F.3d at 541-42 ("by contentions [in] interrogatories or admissions in state court; by calculation from the complaint's allegations (as in *Brill*); by reference to the plaintiff's informal estimates or settlement demands (as in *Rising-Moore*); or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.") "Once the defendant in a removal case has established the requisite amount in controversy, the plaintiff can defeat jurisdiction only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Oshana*, 472 F.3d at 511 (internal quotation omitted).

Thus, under *Oshana*, the first question is whether the defendants, at the time of removal, had a good-faith basis for estimating their potential exposure would exceed $75,000. *Oshana*, 472 F.3d at 511. As noted above, in a case seeking an injunction, "this demonstration may be made from either side's viewpoint (what a judgment would be

4

worth to the plaintiff, or what compliance with an injunction would cost the defendant)." *Meridian Sec.,* 441 F.3d at 542.

According to the Complaint, Crown Point is seeking a "permanent injunction enjoining, restraining, prohibiting and preventing Defendants from operating the home in violation of the Zoning Code." [DE 4 at 7.] Put plainly, they're trying to shut the house down from being used for its intended purpose. In their motion and supporting declaration of their Chief Operating Officer, the Defendants detail the costs they would incur if the City were to succeed on an injunction and be awarded monetary damages. They argue that, at the time of removal, an injunction would exceed the amount in controversy because it would cost them the value of the home ($250,000), the breach of the five-year lease between Pinnacle and CapGrow ($2,726 per month), and disruptions to business operations, in addition to any monetary damages described in the complaint: "all applicable fines and penalties, costs and attorneys' fees" associated with bringing this action. [DE 20.]

Crown Point denounces including the value of the home, because it is not confiscating the home, and the value of the monthly lease, because Defendants could use the property for other purposes. Crown Point also claims the costs associated with disrupting Pinnacle's business operations is unsupported by evidence and should be disregarded. Finally, Crown Point states that Defendants failed to allege that fines, penalties, damages, and/or fees would exceed $75,000. However, Crown Point does not provide any calculation of the amounts attributable to the alleged fines from zoning code violations. Instead, Crown Point attempts to narrow the amount in controversy to

5

Defendants' cost in meeting the City's request to comply with the zoning code but fails to specify what that cost might be.

While Crown Point may not be confiscating the home, any permanent injunction would severely limit Pinnacle's use of the home, and the cost of compliance will deprive them of the full benefit of its lease. If Pinnacle is "permanently enjoin[ed] . . . from operating the home"—as Crown Point requests in its Complaint [DE 4 at 7]—they will be forced to move its residents out, and Pinnacle would remain on the hook to CapGrow for the five year lease. *See* Declaration of Pinnacle's Chief Operating Officer, [DE 20-2 at 2.] Ignoring the 2% yearly increase, the total cost of the lease is $163,560 ($2,726 per month times 60 months). Perhaps Pinnacle could reduce its expense by subleasing the property, but that is entirely speculative.

Then there is the issue of the potential fines being faced by the Defendants for their ongoing zoning violations. Defendants have provided calculations under a reasonable interpretation of the Zoning Code which states: "[a]ny person who violates any provision of this chapter shall upon conviction be fined not less than $10 and not more than $300. Each day that the violation continues shall constitute a separate offense." Zoning Code Section 150.99. Defendants estimate that potential fines for violations between the date that Crown Point issued its notice of violation on May 18, 2020 to the date of removal on October 6, 2020 (142 days) could reach $42,600 per Defendant per zoning code provision. [DE 20 at 3.] Defendants further point out that fines apply to any violation of the chapter, which substantially increases their potential exposure because Crown Point has cited multiple zoning violations against them.

6

In sum, Crown Point's Complaint seeks a permanent injunction and unspecified compensatory damages. Based on the foregoing, the Defendants could reasonably expect at the time of removal that over $75,000 was plausibly at stake in this case. In other words, Defendants have met the burden of showing that its Notice of Removal set forth a "good-faith estimate of the stakes plausible and supported by a preponderance of the evidence." *Oshana*, 472 F.3d at 511.

Once the case is properly removed, the next question is whether it appears to a legal certainty that Crown Point's claim is less than the jurisdictional minimum. As noted above, the Seventh Circuit has made it clear that once a defendant has shown a good-faith basis for removal, "the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum." *Meridian Sec. Ins. Co.*, 441 F.3d at 542. Any "uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal." *Id.* at 543. "Only if it is 'legally certain' that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed." *Id.*

The "legal-certainty test sets the bar high for excluding federal subject-matter jurisdiction." *Carroll v. Stryker Corp.*, 658 F.3d 675, 681 (7th Cir. 2011). A plaintiff seeking to prevent removal may stipulate to damages not exceeding $75,000. *Oshana,* 472 F.3d at 511-12. Without a stipulation, "the inference arises that he thinks his claim may be worth more." *Id.* at 512 (internal citation omitted). Crown Point does not provide a

7

stipulation nor provide any specification regarding the extent of expected fines, penalties, or damages sought against any Defendant. [DE 13, 25.] In short, the City has failed to establish "to a legal certainty that the claim is really for less than the jurisdictional amount." *Meridian Sec. Ins. Co.*, 441 F.3d at 541.

## Conclusion

The Defendants have established the requisite amount in controversy by a preponderance of the evidence, and it cannot be said with legal certainty that any recovery by the City will be less than the jurisdictional floor. This case is properly in federal court under diversity jurisdiction and, therefore, the Motion to Remand [DE 13] must be **DENIED.**

SO ORDERED on December 21, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT